This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.                                                      NO. 33,832

JAIME SARABIA,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Benjamin Chavez, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

**{1}** A jury convicted Defendant of armed robbery and conspiracy to commit armed robbery. Defendant appeals his conviction arguing that: (1) the district court erred in excluding testimony of a defense witness; (2) the district court erred in refusing to provide the jury with an instruction for aggravated battery; (3) there was insufficient evidence to support Defendant's conviction; (4) the district court erred in admitting Victim's testimony discussing threats he received in the case prior to testifying at trial; (5) the district court erred in denying a motion to suppress a photo array identification; and (6) the district court erred in admitting Defendant's unrelated and prior plea agreement containing the alias of "Skills". We address each issue individually, and for the reasons explained herein, we affirm.

**BACKGROUND**

**{2}** Defendant was charged with armed robbery and conspiracy to commit armed robbery stemming from an incident that occurred at an Albuquerque smoke shop where Victim and his wife were working. Following the robbery, Victim informed police that he had previously seen one of the assailants and revealed that his nickname was Skills. Victim additionally informed police that Skills had a tattoo that said "San Jo" or "Burque." The record reflects that police administered two photo array identifications with Victim and his wife, each containing six photos. In the first array, Defendant's brother was pictured, but neither Victim nor his wife identified him or

any other individual as the perpetrator of the robbery. Police removed Defendant's brother's photo and included Defendant's photo in the third array, and both Victim and his wife positively identified Defendant as the perpetrator in separate photo arrays. Victim specifically wrote "[t]his is the guy that robbed me[.] [H]is [nickname] is Skills." Victim indicated that he was 100% positive.

{3} At trial, Victim took the stand, and he was unable or unwilling to identify Defendant as the perpetrator of the crime. After a lengthy bench conference and voir dire of the Victim outside the presence of the jury, arising from Defendant's objection, Victim testified that he feared for his safety and the safety of his family as he had received numerous threats from unknown parties regarding his testimony in the case. With regard to the night of the robbery, Victim testified that Skills was with another person who "pulled out a gun, pointed it at [his] head, demanded money, and clocked [him] with something." Victim additionally confirmed his police statement, describing that Skills yelled "[j]ust [s]hoot him, [j]ust shoot him. . . . Give us your money." Victim also confirmed that Skills "reached into [his] right pockets, front and back" and took approximately $300, a phone, and his keys.

{4} In addition to obtaining Victim's testimony, the State called Defendant's ex-girlfriend, who testified that Defendant used the nickname or alias of Skills, and a detective from the Socorro Police Department, who testified that Defendant "goes by

3

Skills." A Bernalillo County detective assigned to the case testified that Victim's wife positively identified Defendant as the perpetrator of the robbery. Finally, in spite of Defendant's objection, the district court allowed the State to enter into evidence a plea agreement signed by Defendant in a prior, unrelated criminal case. The plea agreement listed "Skills" as Defendant's alias or "AKA" in the caption with other identifying information such as his social security number and date of birth.

{5}     As part of his case, Defendant called Dakota Briscoe (Briscoe) to testify. Briscoe testified that he was involved in the robbery of the smoke shop, and also stated that Defendant was not involved in the robbery and identified a third party as the second perpetrator. Briscoe also stated that he previously pled guilty to his involvement with this case. On cross-examination, the State elicited testimony from Briscoe that at his sentencing hearing on the matter, he never corrected statements that identified Defendant as the second perpetrator in the robbery. Defendant sought to have Briscoe testify regarding his relationship with Victim, including how he purchased drugs from Victim, with the intent of impeaching Victim's testimony. The district court excluded this proffered testimony by Briscoe, determining it to be irrelevant.

{6}     At the conclusion of the trial, the jury was instructed on armed robbery and conspiracy to commit armed robbery. The defense requested additional jury

4

instructions for aggravated battery resulting in great bodily harm and aggravated battery with a deadly weapon, as lesser included offenses. The district court denied Defendant's proposed jury instructions on the basis that the elements for aggravated battery were not contained in the elements for armed robbery. The jury convicted Defendant of both armed robbery and conspiracy to commit armed robbery. Defendant appeals his convictions.

**DISCUSSION**

**I.      Briscoe's Testimony**

{7}      Defendant contends that the district court erred in refusing to allow the defense to present testimony from Briscoe regarding his interactions with Victim and the purported motive for the robbery. Defendant requests that we review this issue de novo on the basis that the district court excluded exculpatory evidence in violation of Defendant's constitutional right to due process and a fair trial, citing *State v. Attaway*, 1994-NMSC-011, ¶ 8, 117 N.M. 141, 870 P.2d 103, for the proposition that appellate courts review constitutional issues de novo. We do not determine this authority to be instructive as *Attaway* addressed exigent circumstances in the context of a forced entry. *Id.* ¶¶ 2, 8. We review a district court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470 ("The admission or exclusion of evidence is within

the discretion of the [district] court. On appeal, the [district] court's decision is reviewed for abuse of discretion."). "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526, *overruled on other grounds by State v. Swick*, 2012-NMSC-018, ¶ 19, 279 P.3d 747.

{8}     On the final day of trial, during the redirect examination of the final witness, Defendant sought to question Briscoe about his relationship with Victim. The State objected and expressed concern to the district court that the defense was "about to ask [Briscoe] if [Victim] was dealing drugs[.]" The State argued that this information was irrelevant. The defense merely responded that Briscoe's statement, during his own sentencing hearing, that he "buys drugs from [Victim] all the time" was relevant. The district court expressed concern that this "was not explored in direct examination of [Victim], cross, [or] redirect[.]" The defense argued that it was addressed when Victim stated that "he did business with him." The district court ruled that this issue was brought to the court's attention late in the proceedings, and it did not see how this line of questioning was relevant. The defense explained that the alleged drug dealing was relevant as it supported the defense's theory that Victim was lying, and it wanted to use the testimony to impeach Victim. The district court stated that the proper method

6

to impeach Victim was to do so through the questioning of Victim himself. The district court ultimately sustained the State's objection.

**{9}** Defendant offered Briscoe's testimony for the purpose of impeaching Victim's credibility based upon alleged prior drug transactions by Victim. Defendant argues that the district court erred in excluding Briscoe's testimony as it "would explain [Briscoe's] actions . . . and would help explain to the jury why it should find . . . Briscoe's version of events credible[.]" He further explains that the motive for the attack would support the defense's theory that Victim was lying about not selling drugs. While Defendant appears to acknowledge that the ultimate issue of the case was the identity of the second robber, he claims that the "identity of the robber is intricately tied to the motive for the robbery." Defendant contends that the district court's ruling "unnecessarily excluded relevant evidence that went to . . . Briscoe's motive and credibility." We conclude that the district court did not abuse its discretion in excluding Briscoe's testimony that was offered for the purpose of impeaching Victim's credibility based upon alleged prior drug transactions. *See* Rule 11-404(B) NMRA.

**{10}** Defendant also argues that he sought to use Briscoe's testimony to impeach Victim's previous testimony. Defendant undoubtedly was permitted by the rules of evidence to impeach Victim and challenge his credibility. *See* Rule 11-607 NMRA

7

("Any party, including the party that called the witness, may attack the witness's credibility."). This Court has recognized that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *State v. Gomez*, 2001-NMCA-080, ¶ 12, 131 N.M. 118, 33 P.3d 669 (internal quotation marks and citation omitted). "Impeachment is crucial to effective cross-examination because it gives a party the opportunity to discredit a witness[.]" *Id.*

{11} In examining the record, however, we note that Defendant neither points us to any portion of the record, nor can we locate where Defendant's counsel questioned Victim about any alleged drug deals or other business that Victim may have conducted with Briscoe. *See* Rule 12-213(A)(4) NMRA (stating that the appellant is responsible for providing citations to the record relevant to his or her argument). As the district court noted, the appropriate time to impeach Victim would have been during cross-examination. *Gomez*, 2001-NMCA-080, ¶ 12; *see State v. Moultrie*, 1954-NMSC-056, ¶ 9, 58 N.M. 486, 272 P.2d 686 ("[T]he credibility of a witness may be impeached by extracting from him on cross-examination admission of specific acts of misconduct or wrongdoing if admissions can be secured in such manner."). Without obtaining testimony from Victim to impeach—such as questions about drug related business with Briscoe—any testimony by Briscoe that he had purchased drugs from Victim

would not discredit Victim's testimony. Accordingly, the testimony the defense sought to admit from Briscoe was not relevant to Victim's credibility. It did not have a tendency to discredit anything Victim said or make Victim's prior testimony more or less probable than it would have been without the proffered Briscoe testimony. Rule 11-401 NMRA. Accordingly, we determine that the district court did not abuse its discretion in excluding the purported impeachment testimony on the grounds of relevance. *See* Rule 11-402 NMRA ("Irrelevant evidence is not admissible.").

## II.    Defendant's Theory of the Case: Aggravated Battery Instruction

{12}    Defendant contends that the district court erred in refusing to instruct the jury on the elements of aggravated battery as he requested. He argues that, while the State asserted the aggravated battery instruction could not be given because aggravated battery is not a lesser-included offense of robbery, Defendant was entitled to the aggravated battery instruction as an *alternative* to armed robbery. The State asserts that there was no evidence to support Defendant's theory of aggravated battery, and it conflicts with his theory that insufficient evidence linked him to the offense.

{13}    "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines,* 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. When reviewing such an issue on appeal, we view the evidence in the light most favorable to giving the requested instruction. *State v. Contreras*, 2007-NMCA-

9

119, ¶ 8, 142 N.M. 518, 167 P.3d 966. If evidence has been presented at trial that is "sufficient to allow reasonable minds to differ as to all elements" of the requested instruction, the defendant is entitled to received that instruction on his or her theory of the case. *State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162. "Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355.

{14}     Following trial, Defendant sought to instruct the jury that if it did not find Defendant guilty of armed robbery, it "must consider whether . . . Defendant was guilty of [a]ggravated [b]attery[,] a possible lesser included offense of [a]rmed [r]obbery." Defendant proposed instructions for both aggravated battery resulting in great bodily harm and aggravated battery with a deadly weapon. Defendant reasoned that if the jury decided that money was not taken from Victim and that "there may have been other things going on between these people, then the jury could find that aggravated battery was what actually happened, because there was not actually a robbery." The State disputed the inclusion of these instructions, arguing that battery was not a lesser included offense of robbery and to include the instructions as alternatives "would basically be adding charges that [were] not included" in the indictment. The State recognized that Defendant did have a right to present his theory

10

of the case, but it contended that Defendant's theory of the case was not that a battery occurred, but that it was not Defendant who committed the crime. After consideration, the district court denied Defendant's proposed jury instructions for the "battery theory charges because the elements . . . are not significantly contained . . . in the elements for armed robbery[.]"

{15} "Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another." NMSA 1978, § 30-3-5(A) (1969). Defendant's proposed aggravated battery with great bodily harm instruction required that in order to find Defendant guilty of aggravated battery with great bodily harm, the State must prove each of the following elements in relevant part: (1) Defendant "touched or applied force to [Victim] by hitting him with a hard object;" (2) Defendant "intended to injure" Victim; and (3) Defendant "caused great bodily harm to [Victim] or acted in a way that would likely result in death or great bodily harm to [Victim.]" UJI 14-321 NMRA. Similarly, Defendant's proposed instruction for aggravated battery with a deadly weapon provided in relevant part that the State must prove the following elements: (1) Defendant "touched or applied force to [Victim] by hitting him with a hard object. [D]efendant used a hard object. A hard object is a deadly weapon only if you find that a hard object, when used as a weapon,

11

could cause death or great bodily harm;" and (2) Defendant "intended to injure" Victim. UJI 14-322 NMRA.

{16}     On appeal, Defendant appears to abandon his argument that aggravated battery was a lesser included offense, and instead argues that he "was entitled to have the jury instructed on aggravated battery as an alternative to the armed robbery charge, not as a lesser included offense." Defendant elaborates stating he "wanted the jury instructed alternatively on aggravated battery[] because if the jury believed that this was a personal attack and not a robbery, then it could convict on the battery charge instead of the robbery charge." At the outset, we note that in order to convict on aggravated battery based upon Defendant's proposed instructions, the State would need to prove that Defendant "touched or applied force to [Victim] by hitting him with a hard object. Defendant points to no portion of the record indicating that Defendant hit Victim with a hard object. In fact, Briscoe himself testified that he "had the gun" and he "hit [Victim] with it." Additionally, Victim corroborated Briscoe's account. Without any conflicting evidence, which Defendant has failed to provide, we cannot conclude that Defendant was entitled to either aggravated battery instruction as there was no evidence to support this theory of the case. *See Gaines,* 2001-NMSC-036, ¶ 5 (stating that a defendant is not entitled to jury instructions on his or her theory of the case if no evidence exists to support it).

{17} To the extent that Defendant argues that he was entitled to the aggravated battery jury instructions on the theory of accomplice liability as an accessory to the aggravated battery committed by Briscoe, we note that an instruction for accessory to a crime was provided to the jury. In order to find that Defendant was an accessory to the aggravated battery, the jury was required to find, in relevant part, that (1) Defendant "intended that the crime be committed;" (2) "[t]he crime was committed;" and (3) Defendant "helped, encouraged[,] or caused the crime to be committed." UJI 14-2822 NMRA. Briscoe testified to hitting Victim with the gun, but we can find nothing in Briscoe's testimony showing that Defendant also intended Victim to be hit with the gun or that he "helped, encouraged[,] or caused" Briscoe to hit Victim with the gun. *Id*. Again, Defendant also corroborated Briscoe's testimony and failed to identify any other evidence in the record that would support his accomplice theory. *See State v. Dominguez*, 2014-NMCA-064, ¶ 26, 327 P.3d 1092 (stating that this Court "will not search the record to find facts to support [an] argument"). While Defendant contends that the district court refused to allow Briscoe to testify that the attack on Victim was a personal crime, not a robbery, therefore compounding its error, this evidence would not be required to show that Defendant was an accomplice to Briscoe's decision to hit Victim with his gun. The motive for the robbery has no bearing on Briscoe's subsequent decision to strike Victim in the head with the gun.

Accordingly, we hold that the evidence did not support Defendant's theory of a defense in the case, and the district court did not err in refusing to issue Defendant's proposed aggravated battery instructions. *See Boyett*, 2008-NMSC-030, ¶ 12 ("Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction."). While we recognize that the district court denied the motion on the basis that the aggravated battery elements were not contained in the elements for armed robbery, thereby denying the lesser included offense instruction, we also affirm under the doctrine of "right for any reason" under an accomplice theory. *See State v. Gallegos,* 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (stating that an appellate court will affirm a district court's ruling if it is right for any reason, so long as it is not unfair to the appellant). As we have determined that there was no alternative argument presented to the district court to support Defendant's accomplice theory, we determine that our right for any reason conclusion is not unfair to Defendant.

### III.    Sufficiency of the Evidence

{18}    Defendant argues that the State failed to present sufficient evidence to sustain his convictions for both armed robbery and conspiracy to commit armed robbery. In reviewing a sufficiency of the evidence claim, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt

14

beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). On appeal, "we will not reweigh the evidence or attempt to draw alternative inferences from the evidence" as "we do not share the original ability of the jury to view the evidence and witnesses firsthand; therefore, we defer to the jury's findings." *State v. Sanchez*, 2015-NMCA-077, ¶ 16, 355 P.3d 51 (internal quotation marks and citation omitted). Additionally, "[e]vidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted).

**{19}** First, Defendant claims there was insufficient evidence to support his conviction for armed robbery as the "only evidence connecting [Defendant] to the robbery was [an] out-of-court [statement] by [Victim] after he was shown a number of photo arrays." Defendant asserts that this statement was insufficient as *State v. Maestas*, 1978-NMCA-084, ¶ 57, 92 N.M. 135, 584 P.2d 182, "implicitly holds that while prior statements may be admitted and given substantive effect, that does not mean that they suffice as the sole basis for a conviction." Further, Defendant alleges that unlike *Maestas*, in Defendant's case, there is no corroborating evidence in addition to the out-of-court statement.

15

**{20}** In *Maestas*, this Court considered whether prior statements made by a victim, to her family, identifying the defendant as her attacker were sufficient to sustain the defendant's conviction where the victim denied at trial that the defendant attacked her. *Id.* ¶¶ 56, 59. We explicitly noted that although the victim made statements to her family identifying the defendant as her attacker and denied that the defendant was the assailant at trial, "any judgment as to the credibility of the witness[] and the weight to be given [her] testimony rest[ed] with the jury and not with this Court." *Id.* ¶ 59. But we added that "a statement, (made by a witness out of court) when established as trustworthy, may properly be considered together with independent or corroborative evidence as proof that the crime charged was committed[.]" *Id.* We then reviewed the record as a whole and noted that in addition to the prior statements, there was corroborating evidence to support the conviction. *Id.* ¶ 62. We determined that the prior statements in conjunction with the corroborating evidence "established that [the] defendant committed the crime charged." *Id.* ¶ 63.

**{21}** While we agree with Defendant that *Maestas* is instructive to our analysis of this issue, we conclude that the State presented additional evidence sufficient to sustain Defendant's conviction for armed robbery. Similar to *Maestas*, Victim previously identified Defendant in a photo array and attested that he was "100 [percent]" certain that the individual he selected was nicknamed "[S]kills" and was

16

one of the individuals who robbed him. *See id.* ¶ 59. Then at trial, Victim only identified Defendant as "being the closest person" to the individual in the photo array. *See id.* Contrary to Defendant's argument, our review of the record reveals that the State here presented numerous pieces of corroborating evidence. While Victim was unwilling or unable to identify Defendant in court, Victim testified that he had previously seen the person who robbed him and that the person's name was Skills. Two witnesses, a detective from the Socorro police department, and Defendant's ex-girlfriend, testified that Defendant used the nickname or alias of "Skills." Additionally, Defendant signed a plea agreement in a previous case stating that his alias was Skills, and Briscoe neglected to correct the statements made at his sentencing hearing that Defendant was the second perpetrator of the robbery. Further, Victim informed police in an interview that Skills had a tattoo that said either "San Jo" or "Burque." When the State sought to question Victim about the statement, the defense objected, and the district court overruled the objection in a bench conference, stating "It's all over his neck. Everybody can see it, anyway." As such, it is apparent that the jury was able to view the tattoos as well. Finally, Victim's wife positively identified Defendant as the person who robbed the smoke shop in an identification separate from that of her husband. We determine that these facts and circumstances "corroborate the truth of the prior statements made by" Victim. *Id.* ¶ 62. Accordingly,

17

Victim's prior statement was not the sole basis for the conviction, and we conclude there was sufficient evidence to sustain Defendant's armed robbery conviction.

{22}	Next, Defendant argues that there was insufficient evidence to support Defendant's conviction for conspiracy to commit armed robbery as the State failed to prove each element of conspiracy. A conspiracy conviction required the State, in relevant part, to prove beyond a reasonable doubt that: (1) "[D]efendant and another person by words or acts agreed together to commit [a]rmed [r]obbery[,]" and (2) "[D]efendant and the other person intended to commit [a]rmed [r]obbery[.]" UJI 14-2810 NMRA. Defendant asserts that the State failed to prove either of the above stated elements, especially because Briscoe did not testify that Defendant was present during the robbery.

{23}	Our Supreme Court has provided guidance on this very issue in *State v. Gallegos,* 2011-NMSC-027, ¶ 25, 149 N.M. 704, 254 P.3d 655, and provides a concise recitation of the relevant caselaw.

> The gist of conspiracy under the statute is an agreement between two or more persons to commit a felony. In order to be convicted of conspiracy, the defendant must have the requisite intent to agree and the intent to commit the offense that is the object of the conspiracy. It is the agreement constituting the conspiracy which the statute punishes. . . . A conspiracy may be established by circumstantial evidence. Generally, the agreement is a matter of inference from the facts and circumstances. The agreement need not be verbal, but may be shown to exist by acts which demonstrate that the alleged co-conspirator knew of and participated in the scheme.

18

*Id.* ¶¶ 25-26 (internal quotation marks and citations omitted).

**{24}** Our review of the record indicates that the State provided sufficient evidence to sustain the conspiracy conviction. Victim testified regarding his statement to police that stated Skills was driving Briscoe, and Skills yelled "[j]ust [s]hoot him, [j]ust shoot him." Then Skills said "[g]ive us your money." Victim elaborated that while Briscoe put his hand in one pocket, "Skills reached into [Victim's] right pockets, front and back." Victim indicated that Skills and Briscoe took approximately $300, his phone, and his keys. Viewed in the light most favorable to the verdict, we conclude a "rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930.

**{25}** With regard to Defendant's argument that Briscoe expressly testified that Defendant was not involved in the robbery, we remind Defendant that it is the "exclusive province of the jury to resolve inconsistencies . . . [and this Court] will not invade the jury's province as fact[]finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Vargas*, 2016-NMCA-038, ¶ 27, 368 P.3d 1232 (internal quotation marks and citation omitted). Accordingly, we affirm Defendant's conspiracy convictions.

19

## IV. Victim's Threat Testimony

**{26}** Defendant asserts that the district court erred in allowing Victim to testify regarding threats he received prior to testifying in district court because the prejudicial impact of this threat testimony outweighed its probative value in violation of Rule 11-403 NMRA. Rule 11-403 allows for the exclusion of relevant evidence "if [the] probative value is substantially outweighed by [the] danger of . . . unfair prejudice." Defendant asserts that the prejudice arose as "[t]he vague evidence regarding threats [Victim] received . . . could not be tied to" Defendant. Defendant additionally argues that the district court erred in failing to find prosecutorial misconduct and grant Defendant a mistrial.

**{27}** The parties dispute whether the motion for a mistrial or the issue of prosecutorial misconduct was properly preserved in district court. It is the burden of the appellant to provide "a statement explaining how the issue was preserved in the court below" with proper citations to the record proper. Rule 12-213(A)(4). Defendant also summarily requests that we review this matter for fundamental error. It is unnecessary to determine whether these additional issues were adequately preserved and we additionally refrain from conducting a fundamental error review of these two issues as Defendant neglected to provide a clear and developed argument regarding the alleged prosecutorial misconduct rising to the level of warranting a mistrial.

20

Accordingly, we decline to address this argument any further. *See State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 ("[T]his Court's policy is to refrain from reviewing unclear or undeveloped arguments which require us to guess at what [a party's] arguments might be[.]" (internal quotation marks and citation omitted)). As there is no dispute regarding the preservation of the Rule 11-403 argument, and it has been adequately developed on appeal, we address this aspect of Defendant's argument regarding Victim's testimony about threats prior to trial.

**{28}** The standard of review for the admission of evidence is whether the district court abused its discretion in admitting the evidence offered. *See State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the district court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 (internal quotation marks and citation omitted).

**{29}** During his testimony, Victim was having difficulty answering many of the State's questions on direct examination, and Defendant acknowledges that Victim "seemed reluctant to testify." After repeatedly refreshing Victim's memory with the photo lineup he signed, identifying Defendant as the perpetrator, and his statement to

21

police, the State requested, outside the presence of the jury, permission to treat Victim as a hostile witness. The State revealed that Victim had been receiving threats, and as a result, he was "acting in an adverse manner" on the witness stand. The district court noted that the testimony had been "interesting" as Victim was "exhibiting signs of stress." The State indicated that Victim and his family felt "under threat" and felt "like there's definite pressure being put on them not to cooperate." The State elaborated, stating that Victim did not know the names of the people threatening him but believed they were associated with the same group with which Defendant associated.

{30} Defendant objected to the State treating Victim as a hostile witness and requested the opportunity to voir dire Victim to determine whether he was hostile to the State. After hearing argument from both sides, the district court found that Victim's "demeanor . . . was noticeable and that his testimony did indicate that his apparent–apparently selective loss of memory was, in fact, inherently incredible and that it did appear to amount to an implied denial of the facts contained in previous statements [establishing what] were very certain identification." The district court further found that when Victim was asked if the person who robbed him was in the courtroom, Victim "seemed strained" and that he "looked at the jury box to see if perhaps the [D]efendant was sitting in the jury," and this behavior "raises question

marks for any objective and reasonable observer." The district court ultimately held that the State could treat Victim as a hostile witness.

{31} Upon continuing with direct examination of Victim, the State asked if Victim did not want to testify against Defendant, and Victim responded that he did not. The State then asked, "[i]n fact, you have received threats about coming here today?" With that, Defendant objected and stated that this statement amounted to the admission of an uncharged, prior bad act and was "grounds for a mistrial." The district court stated that this was "pretty dangerous ground" as the jury could draw strong conclusions based on the question. The State explained that the question was aimed at explaining witness bias, motivation, and why Victim was "acting so strange." After the court considered whether the information was more prejudicial than probative, it decided to conduct a voir dire examination of Victim outside the presence of the jury to determine "whether he, in fact, has a bias because he is afraid to testify."

{32} During the voir dire, Victim testified that he was threatened five to seven times, and "[t]hey told [him] that [he] was going to die and anybody around [him] was going to die" because of his involvement in the case. Victim stated that the threats came from different people each time, and that he began hearing from friends that he was being called a "snitch." Victim added that he had no way of knowing whether these threats were related to Defendant. Following the voir dire, Defendant reiterated to the

23

court that allowing Victim to testify regarding the threats would be more prejudicial than probative and constituted an admission of Defendant's prior bad act. The court ruled that it was not a prior bad act as it was unattributable to Defendant. Defendant then argued that it was irrelevant if the threats could not be attributed to him. The court ruled that the threats are relevant as they reflect witness bias.

{33} Following the ruling, Victim again testified regarding the threats in the presence of the jury. In line with his testimony during voir dire, Victim stated that he had been threatened and had received threats that "anybody around [him would] be killed." Victim testified that the threats had been affecting his life, but that they did not affect his testimony. On cross-examination, Victim testified that Defendant had no contact with him following the robbery, Defendant never threatened Victim personally, and he did not know if the threats he received were related to Defendant.

{34} Defendant argues that the prejudicial impact of this testimony far outweighed the probative value as the jury may have inferred that Victim was unwilling to identify Defendant in court as a result of the threats Victim testified to receiving. Defendant appears to argue that Victim's threat testimony constituted prior bad act evidence that should have been excluded pursuant to Rule 11-404(B) NMRA. The State argues that the threat testimony was admissible as impeachment evidence to show bias on the part

24

of Victim, and the danger of unfair prejudice did not outweigh the probative value. We determine that the district court did not err in allowing the threat testimony.

{35} Under the New Mexico Rules of Evidence, "[a]ny party, including the party that called [a] witness, may attack [that] witness's credibility." Rule 11-607. "The bias or prejudice of a witness is material because it affects the credibility of the witness." *State v. Santillanes*, 1974-NMCA-092, ¶ 5, 86 N.M. 627, 526 P.2d 424. However, the rules of evidence also require that evidence must be relevant in order to be admissible. *See* Rule 11-403. Our Supreme Court has previously determined that not only may a witness be questioned regarding evidence of his or her bias or prejudice, but similarly, extrinsic evidence of a motive to testify falsely is admissible. *See State v. Worley*, 1984-NMSC-013, ¶ 6, 100 N.M. 720, 676 P.2d 247. "Bias of a witness is always relevant." *Santillanes*, 1974-NMCA-092, ¶ 5 (internal quotation marks and citation omitted). However, Rule 11-404(B)(1) prohibits the use of evidence of a crime, wrong, or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2).

**{36}** Notwithstanding relevancy or admissibility, however, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 11-403. "Because a determination of unfair prejudice is fact sensitive, much leeway is given trial judges who must fairly weigh probative value against probable dangers." *State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted).

**{37}** To the extent that Defendant is arguing that this threat testimony was evidence of "crimes, wrongs, or other act[s]" pursuant to Rule 11-404(B)(1), we do not agree. Rule 11-404 governs the admission of evidence attributable to the defendant on trial, intending to prevent convictions based upon the notion that a defendant must have committed the crime because he or she is a bad person. That is not the situation in the case before us. The State did not seek to admit the threat testimony with the intent of showing that Defendant must have been the perpetrator involved in the robbery because Defendant threatened Victim. Conversely, the State sought to use the testimony to impeach its own witness, to show witness bias, and to explain why Victim's testimony did not match his original statement to police. Furthermore, Victim made no indication in his testimony that the threats were in any way

attributable to Defendant. For this reason, we do not determine that the threat testimony constituted improper admission of Rule 11-404(B)(2) evidence of prior bad acts.

**{38}** We conclude that the probative value of the threat testimony was not substantially outweighed by the danger of unfair prejudice. *See* Rule 11-403. The threat testimony was highly probative to show witness bias and provide an explanation of why Victim's testimony did not match his previous statement to police, at which time Victim stated he was "100 percent positive" of his identification. The State was entitled to impeach its own witness, and this evidence served such a purpose without, as Defendant himself acknowledges, "directly or indirectly" attributing the threats to Defendant. *See* Rule 11-607 ("Any party, including the party that called [a] witness, may attack [that] witness's credibility."). While Defendant argues that Victim's threat testimony had the "result of making it appear that [Victim] was too scared to identify [Defendant] in court", this does not create automatic unfair prejudice. Our Supreme Court has recognized that just because evidence may involve a defendant does not necessarily create unfair prejudice. *See Otto*, 2007-NMSC-012, ¶ 16 ("Evidence is not unfairly prejudicial simply because it inculpates the defendant.") (internal quotation marks and citation omitted)). Conversely, "prejudice is considered unfair when it goes *only* to character or propensity." *Id.* (internal quotation marks and citation omitted).

27

Furthermore, "[t]he weight of the evidence and the credibility of the witnesses are for the jury to determine." *Santillanes*, 1974-NMCA-092, ¶ 2.

{40} Here, the threat testimony was properly admitted to show witness bias and as impeachment evidence. The threats were not attributable to Defendant, and given the probative value of this impeachment evidence, "we cannot say that the admission of the evidence was against the logic and effect of the facts and circumstances of the case, untenable, or not justified by reason." *Otto*, 2007-NMSC-012, ¶ 16. Accordingly, we conclude that the district court did not abuse its discretion in admitting Victim's threat testimony.

**V.    Photo Array**

{41} Defendant asserts that the district court erred in denying his motion to suppress the photo array—Victim and his wife identified Defendant in the photo array—as impermissibly suggestive and unreliable. Defendant contends that the photo array was impermissibly suggestive because, in the third array that was used, police detectives replaced a photo of Defendant's brother, "who looks remarkably similar to [Defendant]," with a photo of Defendant. In reviewing a district court's ruling on a motion to suppress, we examine whether the law was correctly applied to the facts of the case, "viewing them in the manner most favorable to the prevailing party, and drawing all reasonable inferences in support of the [district] court's decision." *State*

28

*v. Salgado*, 1999-NMSC-008, ¶ 16, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We determine that the photo array was not impermissibly suggestive and that the district court did not err in denying Defendant's motion to suppress.

{42} Prior to trial, Defendant filed a motion in limine to suppress the photo array identification wherein Victim and his wife identified Defendant as the perpetrator. The motion stated that Victim participated in a February 19, 2010, photo array viewing but did not select any of the individuals pictured in the photos as the perpetrator. Defendant then argued that Victim contacted police and stated that he was informed that "he was to be robbed by Skill[s] and Outlaw from Soccoro." After communicating with Soccoro law enforcement, Albuquerque police suspected Skills was Defendant's brother. Victim and his wife participated in a subsequent photo array viewing on February 24, 2010, at which time Defendant's brother was included in this second photo array. Neither witness identified any photo in the second array as the perpetrator. Next, the eyewitnesses were shown a third photo array containing Defendant's photo but no photo of his brother from the previous array. Victim identified Defendant in the third photo array as "the guy that robbed me" and stated that the photograph "[was] Skills 100 [percent p]ositive." Victim's wife also positively identified Defendant in a separate photo array. There were six photographs

contained in each array and all six photographs were replaced between the second and third arrays. Defendant alleged that because the similarities between Defendant and his brother were "significant" and because police replaced Defendant's brother's photograph with Defendant's photograph in the final array, the array was impermissibly suggestive.

{43} At a hearing on the motion, Defendant clarified an error in his motion, in which he stated that the police replaced Defendant's brother's photo with Defendant's photo. Defendant explained that Defendant's photo was not in fact in the same location as his brother's photo, and that the photos had been scrambled between the two arrays. Defendant further elaborated his argument explaining that because the brothers looked so similar, the eyewitnesses were "getting hints from the officer" to pick the individual who looked like Defendant's brother.

{44} The State contended that Defendant's argument, showing eyewitnesses similar looking people in a previous photo taints the procedure, is not supported by caselaw and that the established caselaw required the consideration of factors which occurred in this case—the eyewitnesses had the opportunity to observe the perpetrator during the commission of the crime; they paid attention; they identified Defendant consistent with their prior description of the perpetrator; and they were certain of their positive identification. Further, the State explained that the eyewitnesses described the

perpetrator as having a "big neck tattoo." Defendant's brother did not have a neck tattoo, and in the photo array containing Defendant's photo, all of the individuals bore neck tattoos. The State contended that the purpose of the photo array identifications is to show eyewitnesses similar looking individuals with the goal of obtaining the most accurate identification. It alleged that the fact that the eyewitnesses could see a photo of Defendant's brother and recognize that the two look similar, but that the brother was not in fact Defendant, weighs in favor of the reliability of the eyewitness identifications.

{45} The district court agreed with the State, finding that the factors required by the caselaw were satisfied, including the final factor that a significant amount of time had not elapsed between the crime and the identification. It held that "the use of the brother in the initial photo[] array did not taint or lead and that, instead, it provided for a more certain [identification]." The district court ultimately denied Defendant's motion to suppress the eyewitness identification or exclude the photo array as the procedure was "properly conducted."

{46} Our Supreme Court has instructed that in analyzing the propriety of a photo array, we must first determine "whether the photo array was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id*. (internal quotation marks and citation omitted). In considering

31

whether the photo array was impermissibly suggestive, we consider the number of photographs in the array, the manner in which police presented the array to witnesses, and the details contained within the photographs. *Id.* ¶ 17. If we determine the photo array to be impermissibly suggestive, we must then consider whether, under the totality of the circumstances, the identification is nevertheless still reliable. *Id.* ¶ 16. The relevant factors we consider in examining the totality of the circumstances are comprised of: (1) the witness's opportunity to see the perpetrator during the commission of the crime, (2) "the witness's degree of attention at the time of the crime," (3) the level of accuracy of the witness's prior descriptions of the perpetrator, (4) the degree of certainty the witness expresses regarding the identification, and (5) "the time elapsed between the crime and the identification confrontation." *State v. Jacobs*, 2000-NMSC-026, ¶ 30, 129 N.M. 448, 10 P.3d 127.

**{47}** In first considering whether the photo array was impermissibly suggestive, we consider the size of the photo array, the manner in which law enforcement presented the array, and the details of the photographs themselves. *Salgado*, 1999-NMSC-008, ¶ 17. Defendant bypasses any analysis or argument addressing these initial factors. Defendant merely states that the method of presentation was impermissibly suggestive because the brothers looked "remarkably similar" and the police replaced the brother's photo with Defendant's photo in the final array. Defendant provides no

citation to caselaw or other authority in support of his argument that this manner of presenting Defendant's photo to the witnesses would give rise to a very substantial likelihood of irreparable misidentification, satisfying the initial "impermissibly suggestive" factor and requiring the court to move on to address the totality of the circumstances factors. *See State v. Desnoyers*, 2002-NMSC-031, ¶ 11, 132 N.M. 756, 55 P.3d 968 ("We have long held that to present an issue on appeal for review, an appellant must submit argument and authority as required by rule." (emphasis, internal quotation marks, and citation omitted)). Defendant additionally appears to dispute the propriety of conducting the photo array after Victim received a call telling him that he would be robbed by Skills. Again, Defendant fails to provide any legal authority in support of this second generalized argument.

{48} Defendant did not dispute the number of photos in the array, the details in the photos, or any other aspect of the photo arrays other than the use of his brother's picture in one array and his photo in a subsequent array. Instead, Defendant skips straight to the recitation of facts, unsupported by record citation, to address the five totality of the circumstances factors regarding reliability. We remind Defendant that we only consider these five totality of the circumstances factors after an appellant has established that the array was impermissibly suggestive. *See Salgado*, 1999-NMSC-008, ¶ 17 (stating that we consider whether the identification is nonetheless reliable

*if* we first determine that the photo array was impermissibly suggestive). Due to Defendant's insufficient analysis of whether the photo arrays were impermissibly suggestive, other than asserting that both brothers appeared separately in the photo arrays, we decline to address Defendant's undeveloped argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we do not review unclear or undeveloped arguments which require us to guess at what parties' arguments might be if properly developed). As a result, we conclude that the district court did not err in denying Defendant's motion to suppress the photo array evidence and testimony by the Victim and his wife.

## VI. Defendant's Prior Plea Agreement

{49} Defendant argues that the district court erred in admitting his prior plea and disposition agreement into evidence as it contained the alias of Skills, and the probative value of the document was substantially outweighed by the danger of unfair prejudice. As we have stated, we review the admission of evidence for an abuse of discretion. *Downey*, 2008-NMSC-061, ¶ 24. Defendant's argument again falls under the purview of Rule 11-403, allowing the district court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" *Id.*

34

{50} During trial, the State sought to admit the plea and disposition agreement that Defendant signed in a previous case. The district court ordered numerous redactions of the document in order not to unfairly prejudice Defendant. The plea agreement contained multiple identifying features, such as Defendant's name, date of birth, and social security number. The document also contained language identifying Defendant by his alias, "AKA: Skills." Defendant objected to the inclusion of the alias as he contended the State had not laid the proper foundation, and he sought to have the alias redacted. Defendant argued that the inclusion of an alias in a plea agreement signed by a defendant is not an adoption of that alias, but merely "an unfounded allegation by the State that it includ[ed] in its paperwork[.]" The district court ruled that the document was independently admissible as a self-authenticating document but required a determination of whether "it is substantially more prejudicial than probative." The district court ultimately found that the alias was relevant and highly probative "because the nickname Skills is so important to this case." It also noted that the plea agreement was not the only source of this information as two witnesses and both attorneys discussed Defendant's alias. Further, Defendant signed this document, accepted responsibility for the information, and never objected to it. Accordingly, the district court ruled that the alias would not be redacted.

**{51}** Defendant claims that he was unfairly prejudiced as the inclusion of the alias "mislead the jury by making it appear that [Defendant] had admitted that 'Skills' was his alias." Defendant asserts that a district court's inquiry into a defendant's alias is not common practice, and when a defendant pleads guilty, he is only admitting to the crime not the alias listed on his plea. However, Defendant fails to provide any citation to authority supporting his argument that: (1) the inclusion of the alias was improper, or otherwise uncommon; (2) a defendant does not validate the alias in signing a plea wherein a specific alias is listed; or (3) the admission of this plea into evidence was an abuse of discretion on the part of the district court. Again, we do not review issues on appeal where an appellant has failed to cite authority in support of an issue as we assume no such authority exists. *See State v. Godoy*, 2012-NMCA-084, ¶ 5, 284 P.3d 410. Accordingly, we do not address Defendant's arguments any further. The district court did not abuse its discretion in allowing the plea agreement containing Defendant's alias into evidence.

## VII. Cumulative Error

**{52}** Finally, Defendant asserts cumulative error. "Under the doctrine of cumulative error, [a reviewing court] must reverse a conviction when the cumulative impact of the errors that occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Baca*, 1995-NMSC-045, ¶ 39, 120 N.M. 383, 902 P.2d 65

(alterations, internal quotation marks, and citation omitted). As we have not identified any error in Defendant's trial, we conclude there was no cumulative error. "[W]here there is no error to accumulate, there can be no cumulative error." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (internal quotation marks and citation omitted).

**CONCLUSION**

{53}   For the foregoing reasons, we affirm Defendant's conviction.

{54}    **IT IS SO ORDERED.**


_____
                                                    **TIMOTHY L. GARCIA, Judge**


**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**M. MONICA ZAMORA, Judge**